UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **PROGRESSIVE SPECIALITY** }<br>**INSURANCE COMPANY,** }<br>}<br>    **Plaintiff,** }<br>}<br>v.                                     }    Case No.: 2:14-cv-02047-RDP<br>}<br>**EMMETT R. HALL, et al.,** }<br>}<br>    **Defendants.** } | |

## MEMORANDUM OPINION

This action arises out of a claim for underinsured motorist ("UIM") benefits submitted by the Halls to Progressive following a single-vehicle automobile accident in which Marina Noelle, a passenger in the vehicle, suffered serious injuries. Progressive seeks a declaratory judgment regarding the total amount of UIM benefits available under three insurance policies insuring nine vehicles owned by members of the Hall family. Progressive contends that the three policies provide a maximum of $700,000 in UIM benefits, while the Halls contend that the maximum UIM benefits total $900,000.  The Halls also filed a counterclaim asserting claims against Progressive for (1) breach of contract, (2) bad-faith failure to pay the policy limits for UIM coverage, and (3) negligent/wanton hiring, training, and supervision in connection with the structuring of their UIM coverage, as well as a claim based on respondeat superior. (Doc. 5).

On June 20, 2016, the Magistrate Judge entered a Report and Recommendation.  (Doc. # 28). The parties were allowed fourteen (14) days in which to file objections to the recommendations made by the Magistrate Judge.  (*Id.*).  On July 5, 2016, Plaintiff-Counter Defendant Progressive Specialty Insurance Company ("Plaintiff" or "Progressive") and

Defendants-Counter Claimants Emmett Hall, Valerie Hall, and Marina Noelle Hall (the "Halls" or "Defendants") each filed objections to the Magistrate Judge's Report and Recommendation (the "Report"). (Docs. # 29, 30). The court addresses each, in turn.

I.   **Standard of Review**

In reviewing a Magistrate Judge's Report and Recommendation, a district court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." *United States v. Shultz*, 565 F.3d 1353, 1361 (11th Cir. 2009) (other citations omitted). "The district judge must 'give fresh consideration to those issues to which specific objection has been made by a party.'" *King v. Ferguson Enters., Inc.*, 971 F. Supp. 2d 1200, 1205 (N.D. Ga. 2013) (quoting *Jeffrey S. v. State Bd. of Educ. of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990)). Absent objection, a district court judge "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge," 28 U.S.C. § 636(b)(1)(C), and need only be satisfied that no clear error exists on the face of the record. *Smith v. E-Backgroundchecks.com, Inc.*, 81 F. Supp. 3d 1342, 1346 (N.D. Ga. 2015) (citation omitted); *see also* Fed. R. Civ. P. 72.

II.   **Analysis**

After careful review, the court concludes that each party's objections are due to be overruled and the Magistrate Judge's Report and Recommendation are due to be adopted.

### A.     Plaintiff's Objections are Due to be Overruled

Plaintiff's objections consist of three "suggested corrections or additions" to the Report. (Doc. # 29 at p. 1).  Specifically, Plaintiff suggests the addition of language to the Report's Facts section, and a clarification that there has been no liability determination as to a wantonness claim against Jacob Miller.  (*Id.* at pp. 1-2).  The court determines that Plaintiff's "objections" consisting of suggested additions to the Report are not proper legal ground for objection, and the court need not undertake a *de novo* review of them.  *See Leatherwood v. Anna's Linens Co.*, 384 Fed. Appx. 853, 857 (11th Cir. 2010) (finding that the only objections entitled to *de novo* review were those identifying specific findings set forth in the report and recommendation and articulating "a legal ground for objection") (citations omitted).  The "facts" referenced in the language that Plaintiff has suggested are preserved in the record, and it is not necessary to adopt them in the Report.  (*Compare* Doc. # 28 *with* Doc. # 29 ¶¶ 1 & 2).  For the reasons stated in more detail below, there is no error in the Report, and Plaintiff's suggestions would in no way bolster the conclusions therein.

Moreover, the court has conducted a *de novo* review of the objection regarding whether there was a liability determination on wantonness (Doc. # 29 at ¶ 3), and determines it is due to be overruled.  It is true that no jury or judge has made a legal determination as to wantonness liability by Jacob Miller (and, to be sure, the court is not making any ruling whatsoever regarding that issue here).  But the Magistrate Judge specifically addressed that issue and found that, for the purposes of the motion for judgment on the pleadings, a *prima facie* case of wantonness by Miller had been established.  (Doc. # 28 at p. 22).  The undersigned agrees that the Magistrate Judge's finding comports with Alabama law on bad faith.  (*See id.* (quoting *LeFevre v. Westberry*, 590 So. 2d 154, 160 (Ala. 1991))).  Thus, the Report is not in error.

3

### B. Defendants' Objections are Due to be Overruled

Defendants have raised four objections: (1) their damages "far exceeded" the amounts referenced in the Report; (2) the Report mischaracterizes the duties of an uninsured/underinsured motorist ("UIM") insurer; (3) the Report's finding of no bad faith by Plaintiff was erroneous; and (4) because the Report recognized an ambiguity in the insurance policies at issue, a jury should necessarily resolve it and other purported ambiguities. (Doc. # 30). The court addresses each objection, in turn.

#### 1. Defendants' Objection One

Defendants strenuously object to the Report's findings that "the liability settlement with Travelers had fully compensated Maria Noel[le] for her damages" and that "the Halls' settlement with Travelers more than covered the total amount of damages they were seeking at that time." (Doc. # 30 at p. 2 (quoting Doc. # 28 at pp. 26-27)). According to Defendants, the information available at that time (and upon which the Magistrate Judge relied), was only "the extent of Marina Noelle's past medical and other out-of-pocket expenses up to the mediation" on July 17, 2014, and did not account for future medical expenses or pain and suffering. (Doc. # 30 at pp. 2-3). Consequently, Defendants argue, the Report's findings do not account for Alabama's law on damages in personal injury cases, which includes as a component compensatory damages for pain and suffering. (*Id.* at pp. 4-6). And, Defendants assert, had the Report fully appreciated Alabama personal-injury damages law, "it would be apparent Progressive knew well in advance of its October 2014 settlement offers that any amount of money it offered under the insurance policies could not come close to fully compensating Marina Noelle's damages." (*Id.* at pp. 5-6).

The underlying facts of this case are truly tragic. But, this action concerns UIM policies. It is not a personal injury matter. Obviously, Defendants objection is designed to save their bad

4

faith counterclaim. However, their objection actually adds support to the Report's finding that the extent of the damages for which Jacob Miller would be liable has not been decided, and thus bolsters the Report's conclusion that Progressive acted in good faith.[1] (*See* Doc. # 28 at pp. 24-27). The court finds no error in the Report and determines that this objection is due to be overruled.

### 2. Defendants' Objection Two

Defendants' second objection, which concerns the Report's characterization of UIM insurers, is also due to be overruled. They argue that the Report's adoption of the Alabama Supreme Court's rulings that UIM insurers act as a hybrid of first-party and third-party insurers, and thus stand in an adversarial relationship with the insured until liability and damages are determined, fails to appreciate the requirement of good faith and fair dealing. (Doc. # 30 at pp. 6-8). In support of their argument, Defendants cite language from *Sanford v. Liberty Mut. Ins. Co.*, 536 So. 2d 941, 942 (Ala. 1988). (*Id.* at p. 7). But in *Sanford*, the court was faced with an erroneous trial court ruling that concluded, as a matter of law, UIM insurers could not be liable for a bad faith claim under any set of circumstances; the *Sanford* court held that UIM insurers can in fact face such claims. *Sanford*, 536 So. 2d at 942. The Alabama Supreme Court recounted the policy reasons why UIM insurers must be able to face bad faith claims. *See id.* To be sure, the court did not create a specific legal duty or define the specific first-party/third-party proportions of the hybrid nature of UIM insurers. Here, the facts in the pleadings demonstrate that Progressive acted with good faith and fair dealing in its handling of Defendants' UIM claim. That is all that is required under Alabama law. The Report reached that correct conclusion.

---

[1] Moreover, the Alabama Supreme Court found in *LeFevre* that a legitimate dispute as to damages existed when the UIM insurer received various conflicting reports as to the plaintiff's damages, and that it was not bad faith to not anticipate future medical expenses. *See* 590 So. 2d at 161-62.

### 3. Defendants' Objection Three

For similar reasons, Defendants' third objection is also due to be overruled: the well-pleaded facts show that Progressive acted in good faith. Defendants contend that the Report does not address whether Progressive had a legitimate basis to offer a $500,000 settlement on October 20, 2014, which was followed by an offer of the full policy limits of $700,000 three days later, on October 23, 2014. (Doc. # 30 at pp. 8-9). In support of the contention that a "low-ball offer without justification" is indicative of bad faith, Defendants cite to two cases from the Western District of Pennsylvania. (*Id.* at pp. 9-10). *See Seto v. State Farm Ins. Co.*, 855 F. Supp. 2d 424 (W.D. Pa. 2012); *Rankin v. State Farm Mutual Auto. Ins. Co.*, No. 11-331, 2011 WL 2118031 (W.D. Pa. Apr. 27, 2011). Those cases are not binding on this court, and, in any event, involve Pennsylvania's law of bad faith—not Alabama's.

Alabama law unequivocally requires that "there can be no breach of an [UIM] contract, and therefore no bad faith, until the insured proves that he is legally entitled to recover." *LeFevre*, 590 So. 2d at 158 (quoting *Quick v. State Farm Mut. Auto Ins. Co.*, 429 So. 2d 1033, 1035 (Ala.1983)). Again, as discussed above, the Report correctly concluded that the damages to which Defendants are legally entitled to recover were not yet determined as of October 2014 (and, the court notes, based on the pleadings, still have not been truly legally determined). (Doc. # 28 at pp. 25-27). Even if Miller's liability carrier (Travelers) quickly determined that Miller's liability as to the *three* passengers in his car exceeded his liability policy's limit of $1.5 million, that does not mean that the Halls' total damages were then known, nor does that indicate what portion of that $1.5 million constituted damages owed to the Halls. In fact, the portion of damages "owed" was not determined until the July 17, 2014 mediation. (Docs. # 5 & 7 at ¶¶ 21, 23). And, the portion the mediating parties agreed to was intended to cover the then-known

damages. (*See id.* at ¶¶ 18, 20; *see also* Doc. # 1 at ¶ 6). The Report properly recognized that Progressive was investigating the Halls' claims, both before and after the mediation (and even through the start of this case), to determine what damages may be owed under the UIM policies after Miller's insurer paid its share. (*See* Doc. # 28 at pp. 26-27).

The foregoing (and other well-pleaded) facts, which show a thirteen-month period of time between the accident and Plaintiff's offer to tender first $500,000 and then, three-days later, the fully policy limits, do not indicate that Plaintiff acted in bad faith (particularly where, as here, a dispute existed as to the actual total policy limit). The *LeFevre* decision is squarely on point. There, the Alabama Supreme Court found that the defendant UIM carrier did not act in bad faith when, after a period of approximately fifteen months, the damages to which the plaintiff was legally entitled still had not been determined, the UIM insurer offered less than the full policy limit to settle the claim. *LeFevre*, 590 So. 2d at 161. The plaintiff refused that settlement offer, and the UIM carrier offered the policy limits two months later. *Id.* The Alabama Supreme Court determined that the insured failed to carry his burden of proving a lack of insurance by the tortfeasor, the tortfeasor's legal liability, proximate cause, and damages. *Id.* at 162 (citation omitted). "There can be no breach of an insured motorist contract, and therefore no bad faith, until the insured proves that he is legally entitled to recover [damages from the uninsured motorist]." *Id.* (quoting *Quick*, 429 So. 2d at 1035) (bracketed portions in *LeFevre*). Here, just as in *LeFevre*, "there was a legitimate dispute concerning the amount of damages," and there is "no evidence of bad faith on the part of [Progressive] in failing to tender the entire policy limits for approximately [thirteen] months." *Id.* For these reasons, the court concludes there is no error in the Report's findings and recommendations concerning Defendants' bad faith counterclaim.

### 4. Defendants' Objection Four

The court is not entirely clear as to the basis of Defendants' fourth objection. Apparently, it goes like this: because the Report recognizes an ambiguity in two of the three UIM policies, the matter should be assessed by a jury. (*See* Doc. # 30 at pp. 16-17). Defendants do not cite any Alabama or federal case law in support of this argument. Instead, they cite to an Illinois appellate court opinion. (*Id.* (citing *Johnson v. Davis*, 883 N.E.2d 521, 529 (Ill. App. Ct. 2007))). Nor do Defendants specify why they read three ambiguities into the policies. (*See id.* at p. 17). *Cf. King*, 971 F. Supp. 2d at 1205 (a judge must 'give fresh consideration to those issues to which specific objection has been made by a party.'"). "The fact that the parties interpret the insurance policy differently does not make the insurance policy ambiguous." *Twin City Fire Ins. Co. v. Alfa Mutual Ins. Co.*, 817 So, 2d 687, 692 (Ala. 2001) (citing *Tate v. Allstate Ins. Co.*, 692 So.2d 822, 824 (Ala. 1997)). "[A]mbiguities or uncertainties in an insurance policy should be resolved against the insurer." *Twin City Fire*, 817 So. 2d at 692 (citation omitted). "Where the parties disagree on whether the language in an insurance contract is ambiguous, a court should construe language according to the meaning that a person of ordinary intelligence would reasonably give it." *Id.* (citation omitted).

The Magistrate Judge noted an ambiguity on the first page of the Declarations of the two multiple-vehicle policies ("The policy limits shown for a vehicle may not be combined with the limits for the same coverage on another vehicle"). (Doc. # 28 at p. 13). This ambiguity would seem to apply to the entirety of the policies. (*See* Docs. # 27-1, 27-2). In other words, it is a general disclaimer. However, the following language contained in Part III of all three policies expressly states:

> if coverage under this Part III applies to more than one **covered auto**, **our** limit of liability under this policy will be the amount shown on the **declarations page** for

coverage under this Part III multiplied by the number of **covered autos** listed on this policy as covered under Part III, not to exceed three.

(Doc. # 27-1 at p. 12, Doc. # 27-2 at p. 12). This limiting language is clear and unambiguous. *See Twin City Fire*, 817 So. 2d at 692 ("If an insurance policy is clear and unambiguous in its terms, then there is no question of interpretation or construction.") (citation omitted). No other coverage Parts in the policies contain any similar express limits of liability. Without question, Part III's limitation is more specific than the general disclaimer at the start of the Declarations page, and it is axiomatic that "[s]pecific terms and exact terms are given greater weight than general language." *Ex parte Dan Tucker Auto Sales, Inc.*, 718 So. 2d 33, 36 (Ala. 1998) (quoting *Restatement (Second) of Contracts* § 203(c) (1981)).

Moreover, and in any event, a reasonable policyholder of ordinary intelligence would read the clear limiting language in Part III to mean that only three vehicles per policy may be stacked. It is this specific language that is central to this case—not the general ambiguity recognized in the Report. As the Report correctly concluded, "this apparent ambiguity is immaterial." (Doc. # 28 at p. 14). Further, the Magistrate Judge properly construed the policies in terms of the insured, and in favor of maximum coverage. There is no error in the Report, and Defendants' fourth objection is due to be overruled.

**III.  Conclusion**

After careful consideration of the record in this case, the Magistrate Judge's Report and Recommendation, and the parties' objections thereto, the court hereby **OVERRULES** the parties' objections and **ADOPTS** the Report of the Magistrate Judge. The court further **ACCEPTS** the recommendations of the Magistrate Judge that Plaintiff's motion to strike be denied and motion for judgment on the pleadings be granted.

A separate order in accordance with the Memorandum Opinion will be entered.

**DONE** and **ORDERED** this July 15, 2016.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE